UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MEGAN ANN G.,

                              Plaintiff,

v.                                                      5:23-cv-0298
                                                        (DNH/TWD)


COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:

HILLER COMMERFORD INJURY &                JUSTIN M. GOLDSTEIN, ESQ.
DISABILITY LAW
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226
Counsel for Plaintiff


SOCIAL SECURITY ADMINISTRATION            GEOFFREY M. PETERS, ESQ.
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION**</u>

## I.       INTRODUCTION

Megan Ann G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying her applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").  Dkt. No. 1.  Plaintiff did not consent to the jurisdiction

of a Magistrate Judge.  Dkt. No. 5.  The matter was referred to the undersigned for a report and

recommendation by the Hon. David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with N.D.N.Y. General Order 18.  Dkt. Nos. 8, 9.  Plaintiff filed a reply brief.  Dkt. No. 10.  For the reasons set forth below, the Court recommends Plaintiff's motion for judgment on the pleadings be denied, Defendant's motion be granted, and the decision of the Commissioner be affirmed.

## II.    BACKGROUND

Plaintiff was born on February 12, 1989; she was 21 years old at her alleged onset date of disability, and 23 years old at the time of her application for benefits.  *See* T. 145-46.[1]  She has a GED, she completed Certified Nurse Assistant ("CNA") training, and she previously worked as an assembler, a cashier, and a CNA.  *See id.* at 166-68.

On October 4, 2012, Plaintiff protectively filed applications for DIB and SSI.  *Id.* at 145-52.  She alleged disability beginning on March 1, 2010, due to degenerative disc disease, anxiety, depression, pinched nerve, displaced disc, and "don wilibrands disease."[2]  *Id.* at 166-68.  Her applications were initially denied on February 19, 2013, *id.* at 97, and she then requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 106-07.  The procedural history of this case thereafter is lengthy, but in short, Plaintiff's claims for benefits were denied four times after hearings before ALJs David J. Bagley and Kenneth Theurer.  *See id.* at 14-30, 618-38,

---

[1] The Administrative Record/Transcript is found at Dkt. No. 7.  Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.  Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

[2] The correct name of the condition is Von Willebrand disease which is a blood clotting disorder.  *See* www.ncbi.nlm.nih.gov/books/NBK459222 (last visited Aug. 16, 2024).

2795-2824, 3835-69.[3]  After the first three denials, Plaintiff appealed to this Court and the parties stipulated to remand each time.  *See id.* at 2900-02, 2925-27, 3924-26.  After the most recent hearing held on October 5, 2022, ALJ Theurer issued a written decision dated November 15, 2022, finding Plaintiff was not disabled under the Social Security Act.  *Id*. at 3835-69.  That decision was appealed directly to the Court when Plaintiff commenced this action on March 3, 2023.  *See* Dkt. No. 1.

## III.    LEGAL STANDARDS

### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir.

---

[3] Several of these ALJ decisions are duplicated in the administrative record, as are other documents.  The Court is only citing to one location for each decision or document.

2020) (internal quotation marks and citation omitted).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996).  Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings.  *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38

4

(2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98;

*Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

### B.    Standard for Benefits [4]

To be considered disabled, a plaintiff seeking disability benefits must establish she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

423(d)(1)(A). Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Social Security Administration regulations outline a five-step process to determine

whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her past
> relevant work despite the impairment; and (5) whether there are
> significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

---

[4] While the SSI program has special economic eligibility requirements, the requirements for
establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d),
are identical, therefore, "decisions under these sections are cited interchangeably." *Donato v.
Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation
omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120; 20 C.F.R.

§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding

the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his

or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the

claimant is capable of working.  *Id.*

## IV.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process promulgated by the

Commissioner for adjudicating disability claims.  *See generally*, T. 3841-57.  At step one, the

ALJ found Plaintiff met the insured status requirements of the Social Security Act through

December 31, 2014, and had not engaged in substantial gainful activity since the alleged onset

date of March 1, 2010.  *Id.* at 3841.  Proceeding to step two, the ALJ determined Plaintiff has the

following severe impairments: degenerative disc disease, migraine headaches, carpal tunnel

syndrome, substance abuse disorder, depressive disorder, anxiety disorder, bipolar disorder, and

morbid obesity.  *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the impairments listed in 20

C.F.R. § 404, Subpart P, Appendix 1.  *Id.* at 3843.  The ALJ next determined Plaintiff had the

residual functional capacity ("RFC") to perform light work with certain physical and mental

limitations.  The mental limitations, as relevant here, specifically include the following:

> [Plaintiff] retains the ability to understand and follow simple
> instructions and directions; perform simple tasks with supervision
> and independently; maintain attention/concentration for simple
> tasks; regularly attend to a routine and maintain a schedule; she can
> relate to and interact with coworkers and supervisors to the extent
> necessary to carry out simple tasks-i.e. she can ask for help when
> needed, handle conflicts with others, state her own point of view,
> initiate or sustain a conversation and understand and respond to

physical, verbal, and emotional social cues but she should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goals.  She should have no more than occasional contact with coworkers and supervisors and should have no more than incidental contact with the public.  She can handle reasonable levels of simple work-related stress in that she can make simple decisions directly related to the completion of her tasks in a stable, unchanging work environment.

I define incidental as more than never and less than occasional, simply the job should not involve direct interaction with the public but she does not need to be isolated away from the public.

*Id*. at 3846.  At step four, the ALJ found Plaintiff had no past relevant work.  *Id*. at 3855.  At step five, the ALJ determined Plaintiff was a younger individual, age 18-49, on the alleged onset date, and considering her age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found there were jobs existing in significant numbers in the national economy that she can perform.  *Id*. at 3855-3857.  Accordingly, Plaintiff was not disabled from March 1, 2010, through the date of the decision.  *Id*. at 3857.

## V.    DISCUSSION

Plaintiff argues the ALJ failed to properly assess the psychiatric opinion evidence from Neli Cohen, Ph.D., Christina Caldwell, Psy.D., and M. Apacible, M.D.; and the ALJ failed to properly account for moderate limitations in maintaining attention and concentration as opined by treating Nurse Practitioner ("NP") Steven Korona.  Dkt. No. 8 at 22-26.  Specifically, Plaintiff first avers the ALJ improperly relied on the testimony of medical expert Dr. Cohen.  *Id*. at 22-24. Next, Plaintiff argues the ALJ improperly relied on non-examining, non-treating sources over examining and treating sources.  *Id.* at 24-25.  Here, Plaintiff attacks the ALJ's evaluation of State agency consultant, Dr. Apacible, who reviewed the medical records, and Plaintiff claims the ALJ did not properly credit the opinion of consultative examiner, Dr. Caldwell, regarding her ability to perform simple tasks independently.  *Id.*  In her last argument, Plaintiff asserts the ALJ

did not properly account for certain moderate limitations as opined by NP Korona.  *Id.* at 25-26.

Defendant contends the ALJ properly assessed the psychiatric opinion evidence and substantial

evidence supports the ALJ's evaluation of it.  Dkt. No. 9 at 10-20.  For the following reasons, the

Court agrees with Defendant.

> **A.     Dr. Cohen**

Although Dr. Cohen did not examine Plaintiff, nor was she a treating provider, the ALJ

gave the "greatest weight" to her assessment of Plaintiff's mental abilities.  T. 3847.  In

explaining the weight given to Dr. Cohen's opinions, the ALJ properly found Dr. Cohen to be a

psychiatric expert with knowledge of the Social Security disability program; and she reviewed

the available medical evidence before providing her opinion.  *Id.*; s*ee also id.* at 2852, 3474-86.

Notably, Plaintiff did not object to her testifying as a psychological expert.  *Id.* at 2852.

However, Plaintiff does object to the ALJ giving the greatest weight to Dr. Cohen's

opinion.  Dkt. No. 8 at 23.  Plaintiff argues, in a conclusory and superficial fashion, that Dr.

Cohen's testimony regarding Plaintiff's substance use is "fully undermine[d]" because the

regulations provide "that a period of sobriety is one that is 'long enough to allow the acute

effects of drug or alcohol use to abate.'"  *Id.* (quoting SSR 13-2p, 2013 WL 621536, at *12 (Feb.

20, 2013)).  At the hearing, Dr. Cohen was asked: "Have you seen cases in the past where

somebody had used in the past, or maybe they might even have a current use, but you have a

period of sobriety, and during that period of sobriety your opinion was that they met or equaled a

listing during that period of sobriety?"  T. 2863.  Dr. Cohen responded: "Yes, if it is between six

to eight months, the period . . . of sobriety."  *Id.*  Plaintiff claims this statement by Dr. Cohen

about what constitutes a period of sobriety "is out of sync with Social Security regulations."

Dkt. No. 8 at 23.  However, the Social Security Administration has also indicated that "[w]e are

unable to provide exact guidance on the exact length and number of periods of abstinence to demonstrate whether [drug addiction and alcoholism] is material in every case." SSR 13-2p, 2013 WL 621536, at *12.

Regarding Plaintiff's mental functioning, in the domain of understanding, remembering, or applying information, Dr. Cohen found no limitations when Plaintiff was not using substances, and with using substances Plaintiff's ability fluctuated between mild and moderate limitations. T. 2857. For Plaintiff's ability to interact with others, Dr. Cohen opined mild limitations when Plaintiff was not using substances, and mild to moderate limitations when she was using substances. *Id.* at 2858. In adaptive functioning and managing herself, Dr. Cohen found Plaintiff to have mild to moderate limitations when not using substances, and moderate to marked limitations when using substances. *Id.* at 2858-59. In addressing work limitations, Dr. Cohen testified Plaintiff could do repetitive, routine, simple tasks in an unchanging work environment; she would be limited to changes associated with simple, unskilled, repetitive work; and she could learn complex tasks when not using substances. *Id.* at 2859-61.

Dr. Cohen testified the medical reports during the relevant time period indicate Plaintiff's mental status examinations including "cognition, attention, memory, concentration, judgment, insight, impulse control and so on" were within normal limits, as were her speech and knowledge testing; additionally, her mood was calm, and her affect was appropriate. *Id.* at 2854-55. Dr. Cohen further testified Plaintiff's symptoms of hallucinations, flashbacks, and mood disorder were precipitated by polysubstance abuse. *Id.* at 2854. Still, Dr. Cohen stated that even during periods of substance use, Plaintiff exhibited relatively normal mental status exams. *Id.* at 2855.

As the ALJ pointed out, Dr. Cohen's testimony was consistent with the mental status examinations of record, which were largely normal. *Id.* at 3847; *see also id.* at 2854. For

example, Plaintiff had numerous normal psychiatric and mental status exams. *Id.* at 2582, 2593,

2599, 2613, 2182-83, 3258, 3261, 3264, 3268, 3272, 3341. Other exams showed Plaintiff had

appropriate or euthymic affect, organized thought process, average intellect, good concentration

and attention, good or fair insight and judgment, and appropriate motor behavior. *Id.* at 431,

433, 439-40, 441-42, 445-46, 454-55, 457-58, 462-63, 470-71, 481-82. In July of 2014, Plaintiff

was alert and oriented; she had a normal mood and affect, an intact memory, normal attention,

and clear and appropriate thought process. *Id.* at 610-11. Numerous psychiatric exams from

2015 through 2019 showed normal findings. *Id.* at 1130, 1138, 1144, 1168, 1213, 1872

(psychiatric health listed within normal limits); 2145 (psychiatric review showed normal speech

and no suicidal or homicidal ideation); 2781 (mood and affect showed no depression or anxiety,

judgment and insight intact); 2792 (psychological exam normal); 3258 (Plaintiff cooperative

with good eye contact; mood described by Plaintiff as "OK" and her affect was euthymic and

calm; attention span, vigilance, concentration, impulse control all normal; judgment and insight

intact). In 2020 and 2021, mental status exams showed no depression, anxiety, or agitation. *Id.*

at 3535, 3604. In 2022, exams showed normal affect, logical thought process, and appropriate

grooming. *Id.* at 4098, 4101. The ALJ also correctly noted the record supported Dr. Cohen's

testimony that where Plaintiff displayed below normal psychological symptoms or sought

emergency room treatment, it was related to Plaintiff's substance abuse. *Id.* at 2855-56, 3848;

*see also id.* at 384, 1691, 2144, 2205, 3322, 4126, 4284.

All in all, the Court finds substantial evidence supports the ALJ's evaluation of Dr.

Cohen's opinions. The ALJ noted her expertise in psychology, her familiarity with Social

Security Administration programs, her review of the records in advance of testifying which

supported her opinions, and the record as a whole supported her opinions. *Id.* at 3847-48, 3854;

*see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Moreover, under the substantial evidence

standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of

the evidence or to argue that the evidence in the record could support her position.  Plaintiff must

show that no reasonable factfinder could have reached the ALJ's conclusions based on the

evidence in the record.  *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012); *see*

*also Wojciechowski v. Colvin*, 967 F. Supp. 2d 602, 605 (N.D.N.Y. 2013) (Commissioner's

findings must be sustained if supported by substantial evidence even if substantial evidence

supported the plaintiff's position); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing

courts must afford the Commissioner's determination considerable deference and cannot

substitute its own judgment even if it might justifiably have reached a different result upon a *de*

*novo* review).  Plaintiff has failed to show that no reasonable fact finder could reach the

conclusions made by the ALJ here.

      Although some medical providers did not agree with Dr. Cohen's findings that Plaintiff

had not achieved sobriety during the relevant period and that the substance abuse was the

underlying cause of her mental health symptoms, this does not undermine Dr. Cohen's opinions

or the ALJ's evaluation of those opinions as Plaintiff argues.  Dkt. No. 8 at 23.  "[I]t is the sole

responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the

record where the record provides sufficient evidence for such a resolution . . . ."  *Micheli v.*

*Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (Summary Order) (citing *Richardson v. Perales*, 402

U.S. 389, 399 (1971)) (additional citation omitted).  The ALJ correctly dispatched his duty to

weigh the evidence and resolve any conflicts, and his findings are supported by substantial

evidence in the record.  Accordingly, the Court finds no error in the ALJ's evaluation of Dr.

Cohen's testimony and opinions.

B.     **Dr. Apacible and Dr. Caldwell**

Plaintiff next contests the ALJ's evaluation of agency sources Dr. Apacible, who

conducted a record review, and Dr. Caldwell, who consultatively examined Plaintiff.  Dkt. No. 8

at 24-25; *see also* T. 77-83, 90-96, 398-401.  The ALJ gave "some weight" to the opinions of

these agency sources.  T. 3848.  In assessing weight to their opinions, the ALJ acknowledged Dr.

Apacible was a State agency medical consultant who "had an opportunity to examine the medical

record at the initial determination" and Dr. Calwell was a consultative examiner who "had an

opportunity to examine" Plaintiff.  *Id.*; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Plaintiff

argues that although the ALJ gave the same weight to these opinions, Dr. Calwell's opinion that

Plaintiff was limited in her ability to perform simple tasks independently was contradicted in the

RFC because the ALJ found Plaintiff capable of performing simple tasks with supervision and

independently.  Dkt. No. 8 at 24.  Thus, Plaintiff posits the ALJ improperly relied on non-

examining sources including Dr. Apacible in the context of psychiatric impairments.  *Id.* at 24.

For the reasons that follow, the Court disagrees.

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both

examining and non-examining State agency medical consultants because these consultants are

qualified experts in the field of social security disability.  *Frey ex rel. A.O. v. Astrue*, 485 F.

App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical

consultant constitutes expert opinion evidence which can be given weight if supported by

medical evidence in the record."); *Little v. Colvin*, No. 5:14-CV-0063 (MAD), 2015 WL

1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in

the evaluation of medical issues in disability claims.  As such, their opinions may constitute

substantial evidence if they are consistent with the record as a whole.") (internal quotation marks

omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.'"
*Reider v. Colvin*, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016)
(quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p,
1996 WL 374184, at *7 (July 2, 1996) (RFC assessment must consider and address medical
source opinions).

Moreover, just because the ALJ gives weight to a particular opinion does not require him
to adopt each limitation identified in that opinion in his RFC determination.  *Crumedy v. Comm'r
of Soc. Sec.*, No. 1:16-CV-1261 (GTS), 2017 WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) (citing
cases); *Schad v. Comm'r of Soc. Sec.*, No. 3:15-CV-0742 (GTS/WBC), 2016 WL 1622799, at *6
(N.D.N.Y. Mar. 29, 2016) ("An ALJ does not have to strictly adhere to the entirety of one
medical source's opinion.") (citing *Matta v. Astrue*, 508 F. App'x, 53, 56 (2d Cir. 2013)), *report
and recommendation adopted sub nom. Schad v. Colvin*, 2016 WL 1627658 (N.D.N.Y. Apr. 22,
2016); *Kitka v. Comm'r of Soc. Sec.*, No. 5:15-CV-60 (DNH/ATB), 2016 WL 825259, at *9
(N.D.N.Y. Feb. 9, 2016) ("There is no requirement that the ALJ accept every limitation in the
opinion of a consultative examiner.").

Here, the ALJ pointed out that Dr. Caldwell's examination showed mostly normal results.
T. 3848.  While Dr. Caldwell stated Plaintiff's presentation and insight were fair to poor, and she
was anxious, Plaintiff also "was cooperative, motor behavior was normal, eye contact was
appropriate, speech was fluent, expressive and receptive language was adequate, thought
processes were coherent and goal directed without evidence of hallucinations, delusions, or
paranoia, mood was neutral, sensorium was clear, orientation was full, attention and
concentration [were] intact, recent and remote memory skills were intact, intellectual functioning
was average, and judgment was fair."  *Id.*; *see also id.* at 399-400.  The ALJ also noted that the

13

opinions of both Dr. Apacible and Dr. Caldwell were consistent with the mental status examinations in the record which were conducted by treating providers. *Id.*; *compare id.* at 79-81, 92-94, and 399-400 *with id.* at 431, 433, 439-40, 441-42, 445-46, 454-55, 457-58, 462-63, 470-71, 481-82, 610-11, 1130, 1138, 1144, 1168, 1213, 1872, 2145, 2182-83, 2582, 2593, 2599, 2613, 2781, 2792, 3258, 3261, 3264, 3268, 3272, 3341, 3535, 3604, 4098, 4101. Still, the ALJ gave more weight to Dr. Cohen's expert testimony in which he "found greater restrictions for handling stress than the opinions" of Dr. Apacible and Dr. Caldwell. *Id.* at 3849.

The ALJ's RFC determination was highly restrictive and specific concerning mental limitations. *See id.* at 3846. Moreover, the mental limitations in the RFC are mostly consistent with Dr. Caldwell's opinion. *Compare id*. at 3846 *with id*. at 400. As noted above, the ALJ was entitled to rely upon the opinions of non-treating sources. *See, e.g.*, *Cheryl A. L. v. Comm'r of Soc. Sec. Admin.*, No. 5:23-CV-0151 (AMN/TWD), 2024 WL 1073442, at *11 (N.D.N.Y. Feb. 5, 2024) ("An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.") (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), *report and recommendation adopted*, 2024 WL 862163 (N.D.N.Y. Feb. 29, 2024). As previously stated, the ALJ is not required to wholly adopt a medical opinion and incorporate it entirely into the RFC. *Matta*, 508 F. App'x at 56.

In short, the Court finds no error in the ALJ's evaluation of the opinions of Dr. Cohen, Dr. Caldwell, and Dr. Apacible requiring remand and the Court cannot reweigh the evidence. *See Cepeda v. Comm'r of Soc. Sec.*, No. 19-CV-4936 (BCM), 2020 WL 6895256, at *8 (S.D.N.Y. Nov. 24, 2020) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or

substitute its judgment for that of the ALJ where the evidence is susceptible of more than interpretation.").  The ALJ sufficiently explained why he gave certain weight to these opinions and his conclusions are supported by the medical evidence of record.  Accordingly, remand is not required because substantial evidence, including the mental status examinations throughout the record conducted by treating providers and the opinions of state agency consultants, supports the RFC determination.

C.    **NP Korona**

Lastly, Plaintiff contends the ALJ erred in assessing treating NP Korona's opinion regarding Plaintiff's moderate limitations in maintaining attention and concentration.  Dkt. No. 8 at 25; *see also* T. 2720.  The ALJ assigned "partial evidentiary weight to an assessment completed by . . . Korona . . , the claimant's therapist . . . , because the no and moderate limitations described for mental functioning are generally supported by the mental status examinations in [the] record."  T. 3849 (citations by the ALJ to the mental status exams in the record omitted).  Plaintiff argues the ALJ did not properly consider this assessment because the RFC provides that Plaintiff can "maintain attention/concentration for simple tasks" which Plaintiff asserts conflicts with NP Korona's assessment of moderate limitations in maintaining attention and concentration, and the ALJ did not explain or reconcile such conflict.  Dkt. No. 8 at 25.  The Court disagrees.

As stated, the ALJ gave this opinion of NP Korona partial evidentiary weight.  T. 3849.  As also noted above, the ALJ gave Dr. Cohen's mental functioning opinions the "greatest weight" and he gave "some weight" to the opinions of Dr. Caldwell and Dr. Apacible.  *Id.* at 3847-48.  Dr. Cohen opined Plaintiff had mild limitations in concentration without substance use, and mild to moderate limitations in concentration with substance use.  *Id.* at 2858.  Dr.

Caldwell found Plaintiff's attention and concentration "intact" and stated Plaintiff "is able to maintain attention and concentration." *Id.* at 400. Dr. Apacible found Plaintiff moderately limited in the ability to maintain attention and concentration for extended periods. *Id.* at 80, 93.

Notably, NP Korona also opined that Plaintiff had no limitations in understanding and remembering instructions, carrying out instructions, and making simple decisions. *Id.* at 2720. These limitations, including the limitation that Plaintiff was moderately limited in maintaining attention/concentration on work activities, were expected to last 4-5 months. *Id.* Thus, under the applicable regulations, NP Korona's opinion does not establish the 12-month duration required to establish disability. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a) (indicating that disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Moreover, the regulations in place during the relevant time period provided that nurse practitioners were not an acceptable medical source, and not entitled to controlling weight; thus the ALJ had discretion to determine what weight to give NP Korona's opinion. *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); *see Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (Summary Order) (rejecting plaintiff's argument that the ALJ committed error by attributing more weight to the opinion of the consulting psychologist than to the opinion of his treating nurse practitioner, because "a nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for 'controlling weight' . . . and the weight attributed to [the opinion] was supported by the applicable regulatory factors.").

In considering the regulatory factors here, the ALJ recognized NP Korona as one of Plaintiff's treating therapists. T. 3949; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The

ALJ further found NP Korona's opinions of none to moderate limitations in several areas of mental functioning were consistent with the mental status exams of record. *Id.*; 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also* T. 431, 433, 440, 442, 446, 458, 463, 471, 475, 479, 481-82 (concentration and attention documented as "good"), 610 (attention within normal limits; thought process "clear and appropriate"), 1168 ("psych" within normal limits), 2621 ("Attention/Concentration is characterized by [a]ble to attend and maintain focus during the interview"), 2792 (psychological exam normal), 3258, 3264, 3268, 3272, 3341 (attention span and concentration "normal").

Further, Plaintiff herself indicated in her function report that she does not have problems paying attention, and she can follow written and spoken instructions. T. 191. Although Plaintiff responded "no" to the question "can you finish what you start", she indicated she is "unable to finish laundry due to going up and down stairs and car[r]ying the laundry" and she did not indicate it was because of any mental limitation. *Id.* As for her other activities of daily living ("ADLs"), the ALJ noted Plaintiff stated she could attend to personal grooming, cook, manage her finances, drive, take public transportation, go grocery shopping, take care of her children, and do chores. *Id.* at 3855; *see also id.* at 400. Plaintiff took college course during the claimed disability period. *Id.*; *see also id.* at 3338, 3608. Such ADLs require attention and concentration.

The ALJ has the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, No. 3:13-cv-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, No. 7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (same). The RFC determination "must be

set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "[I]t is not the function of the reviewing court to reweigh the evidence." *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. Aug. 12, 1993) (citing *Carroll v. Sec. of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). Here, it is evident the ALJ evaluated the opinion evidence and applied the appropriate regulatory factors such that his reasoning and adherence to the regulations is clear. All in all, substantial evidence in the record supports the ALJ's determination that Plaintiff could maintain concentration and attention while performing simple tasks, and remand is not required on this basis.

In sum, the Court finds no error in the ALJ's evaluation of the opinion evidence at issue in this appeal. Since Plaintiff has not raised any other issues regarding the ALJ's decision including his evaluation of other opinion evidence, the medical evidence as a whole, Plaintiff's complaints, and the other aspects of the RFC, any other issues are deemed waived. *See* N.D.N.Y. General Order 18.C(1)D.

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) be **DENIED**; and it is further

**RECOMMENDED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED**, and the decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: August 19, 2024
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge